```
          IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                *
KARYN ANN RATLIFF
                                *
                                *
     Plaintiff,
v.                              *    CIVIL NO.: WDQ-05-3107

GENERAL MOTORS CORPORATION
                                *

     Defendant.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

Pro Se Plaintiff Karyn Ann Ratliff sued her former employer, General Motors Corporation ("GM") for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and failure to accommodate her disability, harassment, and retaliation in violation of the Americans With Disabilities Act ("ADA")[2]. Pending is the Defendant's motion for summary judgment. For the following reasons, the Defendant's motion for summary judgment will be granted.

I.   BACKGROUND

From February 2000 through September 2005, Ratliff worked as a Labor Relations Representative--a salaried employee--with GM in Baltimore, Maryland. *See* Mot. Summ. J. Exh. B ("Ratliff Depo.") at 65:4-6; 73:22-76:8. Throughout her employment, GM required all employees--both hourly and salaried--to enter and exit the facility

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2006).

[2] 42 U.S.C. §§ 12101 *et seq.* (2006).

1

through doors with turnstiles.³ *See* Ratliff Depo. at 92:21-100:9. These doors are located on the facility's manufacturing floor--the hourly employees' work area. *See id.* To access the facility's administrative offices, salaried employees use elevators or stairs, located across the manufacturing floor. *See id.*

In 2003, Ratliff was diagnosed with scolosis of the lower back and a genetic defect. *See id.* at 15:4-25:1; 77:19-79:24. Due to her condition, Ratliff walked slowly and was often teased by other employees. *See id.* at 101:1-102:1. While crossing the manufacturing floor, Ratliff would hear comments such as "step it up, it's not that bad" and "walking a little slow today?". *See id.* at 101:1-102:12; 103:25-104:20. As a result, Ratliff was granted access to the skywalk, an alternative entrance/exit.⁴ *See id.* at 100:11-102:1. Sometime thereafter, Tom Gallagher, the Operations Manager, rescinded Ratliff's use of the skywalk because several employees complained that Ratliff was receiving preferential treatment.⁵ *See id.* at 71:12-72:15; 108:11-109:21. Ratliff described her communications with Gallagher as "hostile and quite intimidating". *See id.* at 156:4-157:16. Ratliff also perceived Gallagher's action as retaliation for her grievances reports to the

---

³The turnstile electronically recorded when employees arrived and departed the facility. *See* Mot. Summ. J. Exh. C ("Hallett Decl.") at ¶4. Tonya Hallett is the current Personnel Director.

⁴The skywalk is an overhead walkway. *See* Ratliff Depo. at 19-20.

⁵By using the skywalk, Ratliff's arrival and departure times were not monitored.

Labor Relations Department.[6]   *See id*. at 111:22-112:10.

Ratliff claims that throughout her employment she experienced disability-related harassment.  *See* Complaint at ¶6. From September through October 2004, Ratliff took a leave of absence due to stress.  *See* Ratliff Depo. at 166:13-15.  During her leave, Tonya Hallett requested an Independent Medical Evaluation ("IME") for Ratliff to determine if she could immediately return to work. *See id*. at 165:25-169.  Hallett, who was going on maternity leave, requested the IME because she wanted Ratliff--an experienced employee--to work in her absence.  *See id.*  Based upon the IME results, Ratliff returned to work. *See id.*   Although Ratliff acknowledges Hallett's motive, she still perceives this as "disability-related" harassment.  *See id.*

On December 21, 2004, Ratliff filed a charge of discrimination with the Maryland Commission on Human Relations and the United States Equal Employment Opportunity Commission ("EEOC"), alleging harassment and discrimination in violation of the ADA.  *See* Mot. Summ. J. Exh. A.  Thereafter, GM initiated a company-wide voluntary retirement program (the "Retirement Program"). *See* Mot. Summ. J. Exh. C ("Hallett Decl.") at ¶8.  In early 2005, Hallett and Bill Kulhanek, the Plant Manager, met with Ratliff to discuss the Retirement Program.  *See id*. at ¶9; Exh. D ("Kulhanek Decl.")

---

[6]Ratliff, however, does not indicate the nature of her grievances.  In viewing the evidence in the light most favorable to the Plaintiff, the Court will assume that her grievances were disability-related.

at ¶10.  During the discussion, Kulhanek also reminded Ratliff that she had to work a mandatory 8:30 a.m. to 4:30 p.m. schedule--not the flexible, unreliable schedule she often followed.  *See* Kulhanek Decl. at ¶10; Ratliff Depo. at 114:5-115:17.  Ratliff was displeased with this mandatory schedule and subsequently resigned--without accepting the Retirement Program. *See* Ratliff Depo. at 58:23-59:9; 88:19-89:7.

On September 29, 2005, the EEOC issued her a right to sue letter. On November 16, 2005, Ratliff brought this suit.

## II. LEGAL DISCUSSION

A.      Motion for Summary Judgment

　　1.   Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable

inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A "scintilla" of evidence is not sufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

  2.  Title VII--Sex Discrimination

  In her complaint, Ratliff alleges sex discrimination. Specifically, Ratliff claims that she was denied promotions and fair wages because of her sex.  *See* Complaint at ¶¶4-5.

  An administrative charge defines the scope of a plaintiff's federal court claims.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).  These claims are limited to those stated in the initial charge, reasonably related to the complaint and developed by reasonable investigation of the charge.  *Id*. at 963.  Plaintiff's charge only alleged violations of the ADA. The charge specifically alleged that she was denied a reasonable accommodation, harassed and retaliated against because she is disabled.  The EEOC, therefore, would not have had reason to investigate other claims.  *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (EEOC would not have reasonably investigated other retaliation, color and sex discrimination claims when charge alleged only race discrimination).  Accordingly, the Plaintiff's claims are limited to those arising under the ADA.

  3.  ADA

5

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to..... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

(i)  Failure to Accommodate under the ADA

The term "discriminate" includes...not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability... 42 U.S.C. § 12112(b)(5)(4). Reasonable accommodation includes measures necessary for an employee to "enjoy equal benefits and privileges of employment as are enjoyed by...other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii) (2005).

To establish a prima facie case of failure to accommodate, the plaintiff must prove that: (1) she has a disability within the meaning of the statute; (2) the employer had notice of her disability, (3) with reasonable accommodation she could enjoy the privileges and benefits of employment as are enjoyed by other similarly situated employees without disabilities; and (4) the employer has refused to make a reasonable accommodation. *Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001); 29 C.F.R. § 1630.2(o)(1)(iii).

Ratliff argues that the Defendant denied her a reasonable accommodation by prohibiting her use of the skywalk. Even assuming that the Defendant denied Ratliff access to the skywalk, her claim fails. An accommodation is reasonable only if it is related to the individual's disability. *See Davis v. Lockheed Martin Operations*

6

*Support, Inc.*, 84 F. Supp. 2d 707, 712 (D.Md. 2000) (causal relationship between disability and requested accommodation must exist). Ratliff offers no evidence that use of the skywalk--as opposed to the turnstiles--would ease her disability. The record indicates that Ratliff's use of the skywalk was more burdensome than the turnstiles. Unlike the skywalk, the turnstiles require no stair climbing and are closer to Ratliff's office. *See* Ratliff Depo. at 94:18-100:9. Ratliff admits that her reason for requesting use of the skywalk was to avoid teasing by the employees. *See id*. at 101:18-25. Accordingly, Ratliff has not established a prima facie case.

(ii) Hostile Work Environment

Ratliff alleges that she was subjected to a hostile work environment. In a hostile work environment, the harasser's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).

The elements of a hostile work environment claim are: (1) the employee was harassed because of her disability; (2) the harassment was unwelcome; (3)the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Booth v. North Carolina Dept. of Environment, Health & Natural Resources*, 899 F. Supp. 1457, 1463 (E.D.N.C. 1995). The Plaintiff cites such incidents as teasing, submission to an IME, discussions with managers regarding the Retirement Program, her use of the skywalk

7

and attendance problems as harassment.

The Plaintiff's claim fails in regard to the allege teasing because she cannot establish that it was sufficiently severe or pervasive. Although the employees' teasing of the Plaintiff's walking pace may have created an unpleasant environment, discrimination laws--such as the ADA--are not general civility codes. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Mere teasing and offhand comments--while arguably inappropriate--are not prohibited by the ADA. *Mistreeta v. Volusia County Dep't of Corrections*, 61 F.Supp. 2d 1255, 1165 (N.D. Fla. 1999)(co-workers teasing of plaintiff's disability not sufficiently severe or pervasive to violate the ADA).

Similarly, the Plaintiff's remaining claims fail because she cannot establish that any of the allegedly harassing behavior was because of her disability. As the Plaintiff has not produced any evidence of the Defendant's animus towards the disabled beyond her subjective feelings, summary judgment is appropriate. *See Cowan v. Lowe's Cos.*, No. 1:98CV7, 1998 U.S. Dist. LEXIS 21882, at *16 (M.D.N.C. Dec. 14, 1998) (Plaintiff's own naked opinion, without more, is simply insufficient to successfully oppose a motion for summary judgment).

4. Title VII--Retaliation

Ratliff contends that the Defendant retaliated against her by prohibiting her use of the skywalk and requiring her to work a rigid schedule.

The elements of a retaliation claim are: (1) engagement

in a protected activity; (2) adverse employment action by the employer; and (3) a causal connection between the protected activity and the asserted adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001).

Summary Judgment is appropriate because Ratliff cannot establish that she suffered adverse employment actions. An adverse employment action is one which adversely affects the terms, conditions or benefits of the plaintiff's employment. *See Munday v. Waste Management of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998). The Defendant prohibited all employees from using the skywalk and working flexible schedules. Ratliff's protests and EEOC filing did not exempt her from these requirements.  *See id.* (terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies).

## CONCLUSION

For the reasons discussed above, the Defendant's motion for summary judgment will be granted.

```
  August 30, 2006                             /S/
Date                             William D. Quarles, Jr.
                                 United States District Court Judge
```

9